IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FIRST SPECIALTY INSURANCE )
CORPORATION, )
 )
Plaintiff, )
 )
v. )          Case No. 04-2359-JWL
 )
WARD NORTH AMERICA )
HOLDING, INC., et al., )
 )
Defendants. )

## MEMORANDUM AND ORDER

I.  Introduction and Background.

This case comes before the court on the motion of defendants Certain Underwriters at Lloyd's, London ("Lloyd's"), for an order quashing deposition notices, and for a protective order, with regard to the deposition of Janet Van Pelt **(doc. 68)**.  The plaintiff, First Specialty Insurance Corporation, has responded (doc. 72), as has separate defendant Ward North America Holding, Inc. ("Ward") (doc. 70); Lloyd's also has filed a reply brief (doc. 74).

The court held a hearing on July 18, 2005 to hear arguments and obtain additional information from the parties.  This memorandum and order will serve to memorialize and supplement the rulings and findings that were made on the record during the hearing.

Although mentioned but not discussed at any length during the recent hearing, the record reflects that plaintiff has filed a motion to amend its complaint **(doc. 54).**  The court now has reviewed this motion, Ward's response (doc. 55), Lloyd's response (doc. 71), and plaintiff's reply (doc. 76).  The court is ready to rule.

As explained in more detail below, each of the above-described motions will be granted in part and denied in part.

O:\M & O\04-2359-JWL-54,68.wpd

By way of background and context, the court notes that plaintiff has filed this action asserting claims against defendants for indemnification for certain insurance coverage which plaintiff provided regarding an incident that took place in a New Jersey night club. Plaintiff alleges that it mistakenly provided coverage to the insured night club, and seeks recovery from its third-party administrator, Ward, and also from Lloyd's. As explained below, plaintiff now wants to add other defendants to this litigation.

II.   Motion to Quash the Deposition Notices of Janet Van Pelt
and for a Protective Order (doc. 68).

On May 6, 2005, pursuant to certain notices (docs. 35, 36, 48, & 49), plaintiff took the deposition of Janet Van Pelt. She is the claims manager of Elliston, LLC ("Elliston"), which acted as an agent for Lloyd's in the transactions related to this lawsuit. Ms. Van Pelt appeared for her deposition not only in her individual capacity but also as Elliston's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). The deposition was taken in New Hope, Pennsylvania, where Elliston has its offices.

Counsel of record for plaintiff, Lloyd's, and Ward all are from the Kansas City metropolitan area. Eugene Bannigan, who represented Elliston and Ms. Van Pelt in connection with the deposition, has offices in New York City. When these various lawyers and Ms. Van Pelt arrived in New Hope for the deposition at or around 8:30 a.m. on May 6, 2005, the court reporter indicated for the first time that she would be unavailable after 2:00 p.m. This is significant because, under the court's scheduling order (doc. 29, at ¶ 2(f)), the parties had agreed that there would be no set time limit on the Rule 30(b)(6) deposition of Elliston. Unfortunately, despite the red flag raised by the court reporter, plaintiff's counsel simply proceeded with the deposition and made no attempt to obtain additional court reporting services for beyond 2:00 p.m.; of course, a five-minute call back to his secretary probably would have served to make sure that the logistical snafu was solved. Although

obviously not their primary responsibility, it should be noted here that counsel for Ward, Lloyd's, Elliston, and Van Pelt, despite being equally aware of the problem, made no effort to address it either.

At 2:00 p.m., when the court reporter announced that she was leaving, plaintiff's counsel adjourned the deposition, indicating that the record would remain open and that the deposition would be reconvened and completed at a later time. Lloyd's counsel objected to any continuation of the deposition. Ward's counsel also indicated that the record should be kept open, as he had not yet had an opportunity to cross-examine Ms. Van Pelt.

On June 17, 2005, plaintiff noticed the continuation of Ms. Van Pelt's deposition for July 21, 2005 in the offices of Lloyd's counsel in Kansas City, Missouri (docs. 61 & 62). Lloyd's filed the instant motion on June 28, 2005, asking the court to preclude the continuation of the deposition.

For all of the reasons set forth on the record during the recent hearing, which will not be duplicated here, the court respectfully denies Lloyd's motion to quash. Simply put, given the above-described circumstances, Lloyd's has not shown good cause to prevent Ms. Van Pelt's deposition from being completed.

However, as plaintiff has provided no authority for the proposition that Ms. Van Pelt should be compelled to travel to Kansas City for her deposition, the court granted in part and denied in part Lloyd's motion for a protective order. That is, unless different arrangements are agreed to by all concerned (and frankly it might make good economic sense to do so), Ms. Van Pelt's deposition must be reconvened in Pennsylvania.

In order to avoid any unfair advantage to plaintiff in obtaining a second opportunity to depose Ms. Van Pelt, plaintiff shall not re-ask questions posed during the first part of the

deposition.[1]  Of course, though, because Ward has not yet had any opportunity to cross-examine Ms. Van Pelt, no such limitation will apply to questioning by Ward's counsel.

Next, the court addressed Lloyd's request for an award of all of its attorneys' fees and travel expenses for any continuation of the Van Pelt deposition.  This request is granted in part and denied in part.  Plaintiff shall reimburse the reasonable round-trip, coach class airfare for one attorney for Lloyd's, and one attorney for Ward, to travel from Kansas City to Pennsylvania.  Plaintiff also shall pay for one night's lodging (but no meals) for those attorneys.  As to Lloyd's request for attorneys' fees, that part of the motion is denied in its entirety.

Lloyd's also requests an award of $8,400 in attorney's fees for Mr. Bannigan, who as earlier indicated is not counsel for Lloyd's, but rather for Lloyd's agent, Elliston, and Elliston's Rule 30(b)(6) designee, Ms. Van Pelt.  The court notes that, in this regard, Mr. Bannigan's affidavit (doc. 68, Exh. B, ¶ 4) is conclusory at best.  It provides no information regarding his hourly rate, the specific nature of the services he rendered, the approximate amount of time spent on each task, or the reasonableness of his billings for the services rendered.  Mr. Bannigan merely states that he incurred $8,400 in fees during his travel of only eighty miles from New York to Pennsylvania to cover a deposition session that lasted less than six hours.  Given the deficiencies in the affidavit, the court flatly rejects the request for Mr. Bannigan's fees.

Finally, plaintiff orally moved during the hearing that Mr. Bannigan be disallowed from appearing at the continuation of Ms. Van Pelt's deposition.  During the first session of

---

[1] As indicated on the record, as a practical matter, counsel will have to be guided by common sense and then self-police this issue, with the understanding that the nature of depositions inherently involves some redundant questioning.  But the court reserves the right to enter an appropriate protective order later, if necessary.

the deposition, Mr. Bannigan appeared on behalf of Ms. Van Pelt individually and on behalf of her corporate employer, Elliston.   It has been reported that, for the most part, Mr. Bannigan defended the deposition, rather than Lloyd's counsel, even though it is uncontroverted that Elliston was Lloyd's agent for the transactions at issue in this litigation. According to plaintiff's counsel, many of the delays during Ms. Van Pelt's deposition were the result of improper objections made by Mr. Bannigan, including "speaking objections" that in this district would be viewed as improper witness-coaching.  The court, given the very sparse record thus far presented, made no ruling as to whether Mr. Bannigan's actions were proper or improper.  The court simply denied plaintiff's oral motion, but without prejudice for reassertion via formal briefing.  That is, absent a showing to the contrary, the court is inclined to believe that, regardless of whether Elliston was an agent for Lloyd's with regard to the subject transactions, Ms. Van Pelt is entitled to have Mr. Bannigan appear as her attorney to the extent that she is being deposed in both her individual capacity and as a corporate representative of Elliston.

The court finally notes that, should these sorts of issues arise again during the continuation of Ms. Van Pelt's deposition (depending on when and where it is done), this court might not have jurisdiction to resolve the issues (*see* Fed. R. Civ. P. 45(c) & (e)); a judge in the Eastern District of Pennsylvania may be called upon to decide any such issues. However, regardless of whether the deposition is reconvened in Pennsylvania or in the Kansas City area, and regardless of whether it is reconvened at a point in time when Elliston is a formal party to this litigation (*see* below), the undersigned magistrate judge <u>strongly</u> encourages counsel to review this district's deposition guidelines, which may be found at *http://www.ksd.uscourts.gov/attorneys/depoguidelines.pdf.*

III.   Plaintiff's Motion to Amend Complaint and Add Parties (doc. 54).

As earlier indicated, plaintiff has moved to amend its complaint.  Plaintiff seeks to name as additional defendants not only Elliston, but also St. Paul Syndicate Management, Ltd., n/k/a St. Paul Travelers Syndicate Management, Ltd. ("St. Paul"), as well as the various individual syndicates which have underwritten the insurance policy at issue.

Under the scheduling order filed on December 22, 2004 (which was entered only after the undersigned magistrate judge had conferred with all counsel then of record) (doc. 29), plaintiff was to file any motions to amend its pleadings, whether to refine its claims or to change parties, by April 1, 2005.  It is significant in this particular case that trial is not scheduled until July 11, 2006; the current fact discovery cutoff is August 31, 2005, with expert disclosures and depositions to follow during the Fall of 2005, and with dispositive motions being due February 3, 2006.  *Id*.

Plaintiff filed the instant motion to amend on June 2, 2005, roughly two months after the applicable deadline.  Plaintiff essentially argues that, pursuant to Fed. R. Civ. P. 15(a), the court must exercise its discretion to allow plaintiff to amend its complaint unless defendants can show undue delay, bad faith, or dilatory motive, or undue prejudice.

Notably, Ward does not oppose plaintiff's motion to amend.  Indeed, Ward agrees that additional parties must be joined for a just adjudication of this case.

Lloyd's, however, opposes plaintiff's motion to amend.  Lloyd's argues that the proposed amendment would be futile, and further that plaintiff has unreasonably delayed amending the complaint to join these parties, as plaintiff knew or should have known of the proposed new parties' involvement with the events at issue in this lawsuit as early as December 2004.

The court respectfully notes that none of the parties have correctly argued all of the standards the court must employ in deciding the instant motion.  It is true, of course, that Rule 15(a) requires that leave to amend "be freely given when justice so requires."  And it is also true that the trial court may deny leave to amend based on factors of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party or futility of amendment.[2]  But, because the instant motion was filed out of time, the court must examine the liberal amendment policy of Rule 15(a) in conjunction with the good cause standard of Fed. R. Civ. P. 16(b).  That is, courts in this jurisdiction consistently have held that, when considering a motion to amend filed after the date established in a scheduling order, the court must first determine whether good cause within the meaning of Rule 16(b) has been sufficiently demonstrated to justify allowing the untimely motion, and only then decide if the Rule 15(a) standards have been satisfied.[3]  Moreover, because the motion to amend seeks to join additional parties, plaintiff's motion must also meet the requirements of Fed. R. Civ. P. 20.

Rule 16(b), it will be recalled, provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the . . . judge."  The party seeking to extend a scheduling order deadline must establish good cause by proving that the deadline could not have been met with diligence.[4]  The party seeking an extension is normally

---

[2] *Castleglen v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993).

[3] *See, e.g.*, *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) (applying this two-part inquiry) (citing *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990)); *Denmon v. Runyan*, 151 F.R.D. 404, 407 (D. Kan. 1993) (same).

[4] *Denmon*, 151 F.R.D. at 407 (holding the plaintiff failed to demonstrate the required "good cause" to justify allowing an untimely motion to amend) (citing *Pfeiffer v. Eagle Mfg. Co.*, 137 F.R.D. 352, 355 (D. Kan. 1991); and Fed. R. Civ. P. 16 advisory committee's notes to the 1983 amendments).

expected to show good faith on its part and some reasonable basis for not meeting the deadline.[5]

The court is inclined to agree with Lloyd's that the deadline for plaintiff to file a motion to join Elliston probably could have been met through an exercise of diligence. As early as December 2004, when Lloyd's served its initial disclosures under Fed. R. Civ. P. 26(a)(1), plaintiff evidently had access to some documents that indicated Elliston was actively involved in Lloyd's decision to deny coverage on the claim at issue. But of course plaintiff is correct that knowledge of these documents does not necessarily equate to a proper legal basis to sue Elliston. Even plaintiff admits, though, that it thereafter became clear that Elliston was an agent of Lloyd's – either on April 25, 2005 (when plaintiff received written discovery responses) or on May 6, 2005 (at Ms. Van Pelt's deposition). Still, plaintiff unfortunately waited a month to file the instant motion.

If, in fact, Lloyd's written discovery responses and Ms. Van Pelt's testimony indicated for the first time that plaintiff has a basis to sue Elliston, it seems that plaintiff should have immediately sought leave to amend the complaint out of time based upon those revelations. At a minimum, if plaintiff and its counsel believed that they still needed some additional time to make a decision whether to sue Elliston, an appropriate motion for an extension should have been filed, and almost unquestionably it would have been granted. Plaintiff did neither.

The court therefore could conclude that plaintiff has not shown good cause for the delay in filing the instant motion to amend the complaint to add Elliston as a defendant. But since the court has separately concluded that plaintiff has shown good cause to add St. Paul as a defendant, and because St. Paul's joinder as a practical matter will require some adjustment of the pretrial schedule (*see* below), the undersigned magistrate judge strongly

---

[5] *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987).

believes that judicial economy would be fostered by allowing Elliston to be joined too. That is, it does not appear that there is any time-bar to plaintiff's claim against Elliston, and it simply would not make sense for the court's ruling on this procedural issue to indirectly spawn a separate lawsuit. *See* Fed. R. Civ. P. 1.

As to Lloyd's additional argument that plaintiff's claims against Elliston would fail under applicable law, the court cannot make such a determination based upon the sparse record currently before it. In any event, plaintiff's motion for leave of court to add Elliston as a defendant will be granted.

As noted above, plaintiff also seeks to add the individual syndicates that funded the policy at issue. The court concludes that amendment of the complaint to include these syndicates would be futile. The court makes this conclusion based on Lloyd's express representation that naming Lloyd's as a defendant has the effect of bringing all of the individual syndicates into the case as defendants. *See* doc. 71, p. 10. To clarify, lest Lloyd's later attempt to "spit the hook," the court finds as a matter of law that plaintiff need not specifically name each syndicate underwriting the policy at issue, but has named all of the appropriate underwriting syndicates by naming Lloyd's as a defendant.

Finally, as noted above, plaintiff wants to add St. Paul as an additional defendant. Plaintiff asserts that it learned for the first time on May 6, 2005 that certain underwriting syndicates had transferred their books of business to St. Paul. Plaintiff contends that, as a result of these transfers, St. Paul has assumed liability for the policy at issue in this lawsuit. Lloyd's does not dispute that plaintiff lacked knowledge of St. Paul's involvement prior to May 6, 2005. Lloyd's merely argues that plaintiff has not presented adequate evidence to prove that St. Paul has assumed liability. The court concludes that plaintiff has satisfied the good cause standard of Rule 16(b) and the liberal amendment requirements of Rule 15(a) as

the motion to amend relates to St. Paul.  The record does not yet support a finding that plaintiff's claims against St. Paul would be futile, and it is clear that the delay in attempting to join St. Paul resulted from the recent disclosure regarding St. Paul's purchase of certain syndicates' business.  Moreover, although this case inevitably will be delayed to some extent as a result of St. Paul's joinder, the court concludes that Lloyd's will not be unfairly prejudiced by this joinder.  The court wishes to keep this case on track, but it concludes that St. Paul should be joined under Fed. R. Civ. P.  20.  Therefore, as St. Paul has not been involved in this case up to this point, it probably will be necessary to extend certain deadlines, including the close of fact discovery and the deadlines for the various parties to disclose their experts.

Based on the record presented, the court finds that, as concerns the instant motion, there is no evidence of undue delay (delay, yes, but ultimately not undue), bad faith, dilatory motive, or failure to cure pleading deficiencies by amendments previously allowed.  Nor is there any evidence of undue prejudice to the non-moving parties; indeed, as earlier indicated, Lloyd's co-defendant, Ward, agrees that the parties plaintiff proposes to join are needed for a complete and efficient resolution of this litigation.  And, finally, as also explained above, Lloyd's has not demonstrated that the proposed amendments are futile as a matter of law.

Plaintiff shall file its amended complaint, adding only Elliston and St. Paul as defendants, by **July 27, 2005**.  Plaintiff shall obtain formal service of process on both of these new parties by **August 5, 2005**.  Copies of this order, and the court's original scheduling order (doc. 29), shall also be included by plaintiff's counsel in the service packets for Elliston and St. Paul.  A courtesy copy of this order also shall be promptly sent by plaintiff's counsel to Mr. Bannigan.

After Elliston and St. Paul have been served with process and their attorneys have entered appearances, all counsel shall confer in good faith and then provide the undersigned magistrate judge with an updated report pursuant to Fed. R. Civ. P. 26(f), i.e., outlining a suggested amended case management schedule.  The Rule 26(f) report shall be submitted via e-mail to the undersigned's chambers by **September 2, 2005**, mindful that it is the undersigned's intention, consistent with the case management norms of the assigned U.S. District Judge, Hon. John W. Lungstrum, to preserve the existing July 11, 2006 trial setting and to have any potentially dispositive motions (i.e., summary judgment ) filed by no later than four months before trial.

Finally, the court accelerates to **September 2, 2005** the deadline for Elliston and St. Paul to serve their initial disclosures under Fed. R. Civ. P. 26(a)(1).  Plaintiff, Lloyd's, and Ward shall supplement their disclosures pursuant to Fed. R. Civ. P. 26(e) by the same deadline.

IV.   Order.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.     Lloyd's motion to quash and for a protective order **(doc. 68)** is granted in part and denied in part.

2.     Plaintiff's motion to amend its complaint **(doc. 54)** is granted in part and denied in part.

3.     Pursuant to Fed. R. Civ. P. 16(a) & (b), a status and scheduling conference will be conducted by the undersigned magistrate judge on **September 8, 2005, at 9:00 a.m., C.D.S.T.**, in Courtroom 236, U.S. Courthouse, 500 State Avenue, Kansas City, Kansas.

Lead counsel of record for each party shall attend and be prepared to discuss, consistent with the above-described Rule 26(f) report, the terms of an amended scheduling order.

Dated this 25th day of July, 2005, at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge